```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

MICHAEL NICHOLS

    Plaintiff

v.                                  Civil Action No.: 2:04-0434

STEELCASE, INC.

    Defendant
_____
STEELCASE, INC.

    Third-Party Plaintiff

v.

SUSPA, INC.

    Third-Party Defendant

### MEMORANDUM ORDER AND OPINION

Pending before the court are the cross-motions of third-party plaintiff Steelcase, Inc. ("Steelcase"), and third-party defendant SUSPA, Inc. ("SUSPA"), filed March 30, 2005, and March 7, 2005, respectively, seeking summary judgment as to Steelcase's claims set forth in its third-party complaint.

I.

A.   Primary Action.

This action arises from an incident occurring on

September 20, 2002, at the United States Postal Service's Remote Encoding Center in Charleston, West Virginia.[1] Succinctly stated, a Postal Service employee, Michael Nichols, sat in a Criterion pneumatic chair, Model 453-5500, which was manufactured by Steelcase. This model chair had a mechanism called a gas spring that allowed the user to adjust the height of the chair. According to the plaintiff's complaint, upon Nichols sitting in the chair, the chair malfunctioned, descending immediately to its lowest position. As a result of the descent and the impact upon reaching the end of that descent, Nichols claims he incurred a severe injury to his back.

Nichols commenced an action against Steelcase alleging productive defectiveness and use defectiveness claims based on the malfunctioning chair. At some point, the Postal Service disposed of or otherwise misplaced the chair. Nichols retained Gary Jackson, an engineering expert, who, based on one exemplar[2] of the same model chair, opined that the malfunction was most

---

[1] The facts in this section are summarized from the court's companion order entered this day.

[2] Jackson apparently obtained two exemplar chairs from the Postal Service both of which purported to suffer from the same malfunction as the chair involved in the incident. Upon his testing, he claims only one of the chairs performed in a manner similar to that described by Nichols.

likely caused by a defective O-ring in the gas spring. Based on this information, Steelcase filed a third-party complaint seeking contribution and indemnification from SUSPA – the manufacturer of the gas spring.

Thereafter, Steelcase sought summary judgment against Nichols contending that he, as a matter of law, could not show a *prima facie* case for strict liability. In the alternative, Steelcase asserted that dismissal of the action was warranted as an appropriate sanction for Nichols' alleged failure to preserve material evidence – the chair. By companion order entered this day, the court denied Steelcase's motion, finding that Nichols had presented sufficient evidence to support a *prima facie* showing of strict liability and that genuine issues of material fact remained. The court further found that the imposition of the severe penalty of dismissal was not warranted.

B. Steelcase/SUSPA Relationship.

At some point prior to March 1, 1994, Steelcase and SUSPA entered into the Steelcase/Supplier Partnership Agreement which had an effective date of March 1, 1994 ("1994 Agreement"). The 1994 Agreement defined "the relationship that [Steelcase] and [SUSPA] ("Supplier") have established concerning the terms and

3

conditions under which Steelcase may purchase goods or services, or both ("Product"), from Supplier." Steelcase Mot. S.J. at Ex. C. Paragraph B of the 1994 Agreement provides that:

> Supplier's price for Product purchased during the term of the relationship is set forth in the attached dated price list. This Agreement describes some of the terms and conditions that will apply if Steelcase orders Product from Supplier. Additional terms and conditions are contained in the standard Steelcase Terms and Conditions of Purchase, which are included in the purchase order form attached to this Agreement. Steelcase objects to the inclusion of any additional or different terms and conditions and none shall be effective unless Steelcase agrees to them in writing.

Steelcase Mot. S.J. at Ex. C. The agreement further provides that the Michigan Uniform Commercial Code will constitute the governing law.

A copy of Steelcase's standard purchase order containing the "Terms and Conditions of Purchase" ("Conditions") was attached as an exhibit to the 1994 Agreement.[3] Id. at Ex. D. The Conditions provide, in relevant part, that:

> 1. When used in this order the term "Buyer" refers to Steelcase Inc. and the term "Seller" refers to the person or entity accepting this order to provide products, materials, services or equipment (collectively "work,") to Steelcase, Inc.
>
> 9. Seller agrees to indemnify Buyer against and hold it harmless from, to assume liability for, and at

---

[3]It appears that the purchase order was a one-page reversible form. The conditions were found on the back.

> **Buyer's option, to defend Buyer, its dealers, agents, employees, officers and directors, from any claim or action by any third person arising out of or alleged to arise out of the manufacture, sale, performance, use or delivery of the work, defects in the work, or from infringement of any patent, trademark or copyright by the work.  Seller also agrees to indemnify Buyer against any claim, action or other damages resulting from Seller's failure to comply with the provisions of this order.  Any costs, settlement, judgment, reasonable attorneys' fees, interest or other expense that Buyer, its dealers, agents, employees, officers or directors may pay or become obligated to pay, in connection with any such claims or actions shall be reimbursed to Buyer by Seller.**

**Id.**

In 1996, Steelcase and SUSPA executed a second "Steelcase Supplier Partnership Agreement" (the "1996 Agreement").  The agreement's effective date is March 1, 1996, and it is "intended to replace any other agreement that may exist between the parties concerning the purchase and sale of Product."  SUSPA's Resp. at Ex. 1.  As with the previous agreement, the 1996 Agreement is governed by the Michigan Uniform Commercial Code.  The agreement also expressly references and incorporates the Conditions as additional terms.

The 1996 Agreement was signed on behalf of SUSPA by Michael A. Dunlap.  Dunlap has offered an affidavit stating that the purchase order attached as the exhibit to the 1996 Agreement did not contain the Conditions.  Dunlap Aff. at ¶¶ 8-12.

Carlon Synder, the Manager of Product Safety at Steelcase since 1998 and an employee of Steelcase since 1985, has provided an affidavit.  He states that:

> Based on the Accident Report prepared by the United States Post Office with regard to the September 20, 2002 incident involving Michael Nichols, the chair allegedly involved in Mr. Nichols['] incident was manufactured on July 16, 1996.  As the subject chair was allegedly manufactured on July 16, 1996, Steelcase would have committed to the purchase [of] the pneumatic cylinder[4] to be used on the subject chair approximately two weeks prior to July 16, 1996, under the Terms and Conditions of Purchase Agreement.

Synder Aff. at ¶ 11.  He states that the purchase order attached to the 1994 Agreement contained the same Conditions "for every purchase order from 1994 until approximately 1999."  Id. at ¶ 7.  Of the period of 1994 to 1999, he testified as follows:

> Further, it is my belief and understanding that Steelcase would release, after review of production projections and related matters with SUSPA each Fiscal Year, a "blanket" Purchase Order each March for the coming year.  Periodic Purchase Orders were released to [SUSPA], for specific pneumatic cylinder quantities and delivery dates against this "Blanket Purchase Order,["] as dictated by actual production schedules.  Typically, these subsequent purchase orders were released by the production planners on a weekly basis, for production of chairs scheduled the following week.

Id. at ¶ 8.  He further testified that, even though purchases of

---

[4]SUSPA refers to its product as a gas spring.  Steelcase has referred to SUSPA product as a pneumatic cylinder.  Inasmuch as the terms appear to refer to the same product, the court will refer to it as a gas spring.

6

gas springs were consummated through the use of purchase orders containing the Conditions, SUSPA did not object to the Conditions.  Id. at ¶ 10.

In moving for summary judgment, SUSPA contends that Steelcase may not establish a prima facie case of strict liability inasmuch as Steelcase may not rule out that the source of the malfunction was something other than a defect for which SUSPA should bear responsibility.  SUSPA further contends that Steelcase is not entitled to express indemnification inasmuch as the contract governing the sale of the particular gas spring did not contain an indemnification clause.

Steelcase moves for summary judgment contending that, by operation of either the 1994 Agreement or the 1996 Agreement, SUSPA expressly agreed to indemnify Steelcase for any loss arising from the sale and subsequent use of the gas spring. Steelcase asserts that the sole defect identified by plaintiff's expert as more likely than not causing the malfunction is the failure of an O-ring in the gas spring.  Inasmuch as that O-ring is part of the gas spring assembly, Steelcase states that it is entitled to indemnification from SUSPA as a matter of law.

II.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u> The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the

non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.

A. <u>Prima Facie Claim For Strict Liability.</u>

As a preliminary matter, the parties dispute whether a <u>prima facie</u> case for strict liability has been shown. SUSPA contends that Steelcase may not show a <u>prima facie</u> case inasmuch as Steelcase may not rule out all other reasonable causes for the chair's malfunction. For its part, Steelcase contends that, if the chair malfunctioned at all as a result of any defect, it did so as a result of a defect attributable to SUSPA.

As noted in the companion order, a strict liability action may be proven by circumstantial evidence. Syl. Pt. 3, <u>Anderson v. Chrysler Corp.</u>, 403 S.E.2d 189 (W. Va. 1991). In <u>Bennett v. ASCO Services, Inc.</u>, __ S.E.2d __ 2005 WL 1604028 (W. Va. July 8, 2005), the West Virginia Supreme Court of Appeals clarified the proof needed at the summary judgment stage, stating that:

> <u>Anderson</u> does not require a plaintiff, to succeed at the summary judgment stage, to conclusively eliminate all possible contributing causes other than a defect for an accident. Instead, a plaintiff is only required to submit evidence that has the capacity to sway the outcome of the litigation, and from which a jury could fairly conclude that the most likely explanation of the accident involves the causal contribution of a product defect.

**Id.** Quoting 2 Am.L.Prod.3d § 31:26, the court further stated that:

> "The plaintiff is not required to eliminate with certainty all other possible causes of the accident. It is sufficient if the evidence reasonably eliminates other causes such as the handling or misuse of the product by others than the manufacturer, thus permitting the fact finder to find that it was more probably [sic] than not that the product was defective."

**Id.**

In the companion order entered this day, the court denied Steelcase's motion for summary judgment finding that Nichols had sufficient evidence to persuade a reasonable juror that the chair's malfunction more likely than not occurred as a result of a defect. That evidence included eye witness accounts of the incident, an expert opinion based on exemplar chairs, previous complaints to the manufacturer from other purchasers and testimony that numerous chairs at the facility suffered from the same type of malfunction. To the extent Nichols has set forth a _prima facie_ case based on a faulty O-ring in the gas spring, Steelcase may also set forth a _prima facie_ case in support of its third-party complaint.

Steelcase, nevertheless, suggests that it has established something more than a _prima facie_ case. However, the

11

court has already determined that there exists a genuine issue of material fact concerning whether the malfunction was proximately related to a defect and, if so, what was the nature of the defect.  Indeed, the court noted the opinion of SUSPA's engineer that the malfunction may have been related to a design or assembly defect for which Steelcase was responsible.  The court also noted the opinion of Steelcase's expert that the malfunction was not related to a design defect but rather was related to normal wear and tear.  What more likely than not caused the malfunction, is a question for the jury to resolve weighing the testimony and credibility of the witnesses, including the expert witnesses.[5]  The court finds that Steelcase is not entitled to summary judgment.

B. Contractual Indemnification.

The parties dispute whether Steelcase has a contractual right of indemnification.  As a preliminary matter, the parties agree that their contracts were both formed and performed in the

---

[5] Steelcase notes the expert testimony of Gary Jackson suggesting that his testimony rules out any other possible defect.  Jackson testified that he was not testing the thrust bearing and that he did not test the activation mechanism for adjusting the chair's height.  Dep. Jackson pp. 95-96.  While Jackson's testimony may in the end be more persuasive, it is not uncontroverted at this stage.

State of Michigan.  SUSPA's Resp. at p. 3, n. 2 ("[s]ince the contract between Steelcase and SUSPA was formed and performed in Michigan, Michigan law is the applicable substantive law."); Steelcase's Reply at p. 2 ("[a]s indicated in the Agreement, the parties agreed the Michigan law would govern and both Steelcase and [SUSPA] reside and entered into the subject Agreement in the State of Michigan.").

SUSPA contends that the 1996 Agreement was the operative agreement and that the sale of the gas spring at issue would have occurred under the 1996 Agreement.  Because the 1996 Agreement did not attach a complete purchase order containing the Conditions, SUSPA asserts that the indemnification provision is not part of the contract.

It is undisputed that the 1994 Agreement incorporated the Conditions which included paragraph 9 – the indemnification provision.  Steelcase has produced uncontroverted evidence through Synder's Affidavit that the Conditions remained the same from 1994 to 1999 and that each sale of gas springs was made pursuant to a purchase order containing the Conditions.

Under Michigan law, a valid contract is formed where there exists a meeting of the minds of the parties to an

13

agreement on the material facts. <u>Heritage Broadcasting Co. v. Wilson Communications, Inc.</u>, 428 N.W.2d 784 (Mich. App. 1988). "Where one writing references another instrument for additional contract terms, the two writings should be read together." <u>Forge v. Smith</u>, 580 N.W.2d 876, 881 (Mich. 1998). Here, paragraph B of the Second Agreement states that:

> This Agreement describes some of the terms and conditions that will apply if Steelcase orders Product from Supplier. Additional terms and conditions are contained in the standard Steelcase Terms and Conditions of Purchase.

<u>Id.</u> Even assuming that the Conditions were not attached, the express reference to the Conditions in the 1996 Agreement evidences the parties' stated intent to incorporate the Conditions as material terms of that contract.

Moreover, under Michigan law, "[t]he stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge." <u>Sponseller v. Kimball</u>, 224 N.W. 359, 360 (Mich. 1929). Indeed, the Michigan Supreme Court of Appeals has stated that:

> It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions.

<u>Scholz v. Montgomery Ward & Co.</u>, 468 N.W.2d 845, 848 (Mich.

14

1991). Inasmuch as the 1996 Agreement explicitly references the Conditions and inasmuch further as the purchase order attached to the 1996 Agreement did not contain the Conditions, SUSPA had a duty to inquire as to the Conditions. SUSPA may not avoid the indemnification provision merely because the purchase order attached to the 1996 Agreement omitted the page with the Conditions.

The court finds that the 1996 Agreement incorporated paragraph 9 of the Conditions as set forth in Steelcase's standard purchase order. If the evidence demonstrates that the plaintiff's injuries were caused by malfunction related to a defect in the gas spring, Steelcase has a contractual right of indemnification pursuant to the 1996 Agreement.

IV.

For the reasons set forth herein, it is accordingly ORDERED that:

1. The motion of SUSPA, Inc., seeking summary judgment on Steelcase's Third-Party Complaint be, and it hereby is, denied.

2. To the extent the motion of Steelcase, Inc., seeks

to establish a contractual right of indemnification, the motion be, and it hereby is, granted.  Otherwise, the motion is denied.

The Clerk is directed to forward copies of this written opinion to all counsel of record.

DATED: August 4, 2005

_____
John T. Copenhaver, Jr.
United States District Judge

16